STATE OF RHODE ISLAND
Newport COUNTY,SC

SUPERIOR COURT
C.A. No.

06 OCT 17 PM12:17

BILLY "BRADDY" ROMERO RICALDE,
Plaintiff,

NC 06-504

v.

JESSIE KENDALL,
Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes the Plaintiff, Billy "Braddy" Romero Ricalde ("Braddy"), by and through his attorney, and hereby makes the following allegations:

1. This court has jurisdiction of the above-captioned matter under R. I. Stat. §8-2-13.

2. Braddy Romero (hereinafter "Plaintiff"), is an adult individual, resident of Cusco, Peru, and a Peruvian citizen. Plaintiff does not speak English.

3. Jessie Kendall (hereinafter "Defendant"), is an adult individual and a resident of the City of Newport, Rhode Island.

### Facts

4. Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 through 3 as though fully restated and realleged.

5. Plaintiff, known professionally as "Braddy," is a 29-year-old artist. He started his study of art in 1995. Beginning in 1997, he began a professional career as an artist. He has exhibited his work in venues, including but not limited to, the Museum of Contemporary Art (Cusco, Peru), the National Institute of Culture (Cusco, Peru), the Inca Museum of the National University of San Antonio Abad (Cusco, Peru), the CATCCO Museum (Ollantaytambo, Peru), Banco Popular (Cusco, Peru), the Cultural Salon of Banco Wiesse Sudameris (Cusco, Peru) and most recently his work was exhibited at the Japanese Peruvian Cultural Center in Lima, Peru. He has also exhibited his art work at the Inter-American Development Bank (Washington, D.C.), the Monic Golstrom

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

Gallery (New York City, New York), the Space on Spurgeon Gallery (Santa Ana, California), and 7 Degrees (Laguna Beach, California).

6. Plaintiff's paintings are in private collections in Brazil, France, Holland, Canada, Switzerland, and the United States.

7. In August, 2003, Plaintiff was selected by the Inter-American Development Bank ("IDB") (Washington, D.C.) as a promising young Hispanic artist in a competitive application process. He was asked to exhibit his paintings and drawings (the "artwork") in the IDB's Atrium gallery.

8. Plaintiff transported over 40 framed paintings and drawings to the IDB for the exhibition.

9. The IDB did not pay for his expense in shipping the work to the United States, and Plaintiff paid for the shipment himself at a cost of almost $4,000 dollars.

10. On or about September 2003, Plaintiff received an e-mail introduction from Defendant. Defendant stated that she was "planning to come to Cusco this fall . . . to look for contemporary Peruvian artists to show in NYC for several reasons." In the e-mail, she stated, "I wish to promote painters specifically in the Cusco area . . . "

11. In September 2003, Plaintiff traveled to New York and met Defendant in New York City. Defendant told Plaintiff that she had worked as an art promoter, her father was a well-known art curator, and she had contacts in New York with galleries and museums where Plaintiff could sell his paintings.

12. Defendant stated that she liked his work very much and she would like to invest in him as an artist.

13. Defendant said she would contact friends and associates to try to locate a venue for an exhibition of his work in Rhode Island or New York.

14. On September 26, 2003, Defendant purchased $5,000 of Plaintiff's artwork.

15. The artwork, stored in Washington, was to be delivered within a year of that date or sooner.

True Copy Attest
Jane M. Anthony
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

16. The prices for each piece were set by the established IDB exhibit list prices.

17. The agreement was evidenced by a writing drafted by Defendant and signed by Defendant and Plaintiff, dated September 26, 2003.

18. At the time of the written agreement, Defendant knew that the majority of Plaintiff's work was in Washington, D.C. and he was negotiating with a businessman, Mr. Gonzalo Corso (hereafter "Corso"), to include his artwork in an exhibition of Peruvian painters in Washington.

19. Defendant knew that the artwork was being stored in Corso's house during the negotiation process.

20. At the time of the written agreement, Defendant knew that Plaintiff did not have the funds to transport his artwork to Rhode Island.

21. In October, Defendant gave Plaintiff an additional $2,000 so that he could continue to stay in New York and paint. This amount was an investment in Plaintiff until such time as he could sell his paintings and reimburse her.

22. In November, Plaintiff's entry visa to the United States expired and he had to return to Peru.

23. Plaintiff could not afford to transport his work back to Peru and he left with hopes that Corso could arrange an exhibition for him in Washington.

24. When Corso could not arrange an exhibit on terms agreeable to Plaintiff, Corso requested that Plaintiff remove his artwork from his house.

25. In November 2003, Defendant corresponded with Plaintiff, telling him of her endeavors to arrange for exhibits at galleries in Newport, Puerto Vallarta, Mexico, and New York.

26. Defendant also spoke of helping him set up a website of his work.

27. At the beginning of February 2004, Defendant said she would collect Plaintiff's work from Corso in Washington, D.C. and transport it to Rhode Island so that she would have it available in the event she could schedule an exhibition.

28. Defendant stated that the transportation expenses would be covered when she sold his work.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

29. Defendant procured seven crates of paintings from Corso.

30. Defendant paid nothing to Corso when she picked up the work.

31. Included among these paintings were the Defendant's own paintings previously purchased. (See Par. 11 above.)

32. In May 2004, Defendant e-mailed Plaintiff to tell him that she would "focus more on [promoting] the paintings this summer" so that she could "recoup her expenses."

33. In June 2004, Plaintiff corresponded with Defendant, telling her that he had an offer from a friend and art collector from France who was ready to retrieve the paintings and pay for their transportation to Peru and France for the purpose of exhibiting the artwork.

34. Plaintiff asked for an accounting of what he would owe her out of the future proceeds from the sale of the paintings and informed Defendant that he or an intermediary would come to pick them up.

35. Defendant refused to release any of the artwork without payment of $8,000, and the French investor left without the paintings or drawings.

36. The Defendant threatened to destroy the artwork unless she got paid.

37. Defendant has exercised control of over a minimum of 40 pieces of artwork, belonging to Plaintiff, valued at over $50,000.

38. Defendant has retained possession of this work without the express or implied consent of Plaintiff and in full knowledge that she has no right to this artwork, except for the $5,000 worth of work that she purchased from Plaintiff.

39. Defendant's conduct is wrongfully preventing Plaintiff from exhibiting and selling his artwork.

40. Defendant has refused to account to Plaintiff for the number of pieces she has in her possession, whether and how much she has enriched herself from sales of his work, or otherwise caused this valuable property to be wasted, devalued or damaged.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

41. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages, which include without limitation the following:

a) potential damage or destruction of his artwork;

b) loss of profits on sold artwork;

c) loss of potential sales of artwork;

d) loss of career growth due to the fact that his artwork has been basically "in hiding" for over 2 years;

e) the loss of professional opportunities to show his work in venues including California, New York, and France;

f) and emotional distress.

## COUNT I

## Violation of Rhode Island Statute 5-62-7

42. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1-41 as though herein fully restated and realleged.

43. Plaintiff is an artist within the meaning of R.I. Stat. §5-62-2 (1).

44. Defendant is an "art merchant" within the meaning of R.I. Stat. §5-62-2(2) in that she is "in the business of dealing, exclusively or non-exclusively, in works of fine art . . . or a person who by his or her occupation holds himself or herself out as having knowledge or skill peculiar to those works . . ."

45. In February 2004, Plaintiff caused to be delivered to Defendant, as art merchant, about 40 paintings and drawings for the purpose of exhibition and/or sale on commission, fee or other basis of compensation.

46. Defendant accepted this work for the purpose of exhibition and/or sale.

47. Pursuant to R.I. Stat. §5-62-7(1)(i), upon acceptance of delivery of Plaintiff's work, Defendant became a co-signee of Plaintiff and an agent with respect to Plaintiff's work.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

48. Pursuant to R.I. Stat. §5-62-7(1)(ii), Plaintiff's artwork is trust property in the hands of Defendant for the benefit of Plaintiff.

49. Because Defendant is an agent of Plaintiff and his artwork is trust property, Defendant owes to Plaintiff any proceeds she receives from the sale of the trust property.

50. Pursuant to R.I. Stat. §5-62-7(1)(v), no trust property or trust funds shall be subject or subordinate to any claims, liens, or security interest of any kind or nature whatsoever.

51. Defendant unlawfully subjected and continues to unlawfully subject trust property to an alleged claim or lien in direct violation of R.I.Stat. §5-62-7(1)(v) by refusing to release the trust property until Plaintiff's pays her the sum of $8,000, an amount she claims he owes her.

52. As a direct and proximate result of Defendant's knowing and willful violation of R.I. Stat. §5-62-7, Plaintiff has been irreparably damaged and suffered emotional distress.

COUNT II

Conversion

53. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1-52 as though fully reinstated and realleged.

54. On or about February 2004, Defendant, previously introduced to Plaintiff as a person with extensive art connections in New York and Rhode Island, agreed to hold Plaintiff's artwork at her house for the purpose of arranging sales or exhibits of his artwork.

55. Plaintiff agreed that Defendant could keep his artwork at her home for the purpose of arranging sales or exhibits.

56. Upon information and belief, Defendant has been unable to arrange exhibitions or sales of Plaintiff's artwork and has greatly curtailed or stopped promoting his work.

57. She wrote him by e-mail in the beginning of February 2004, "because of my own investment and belief in your work I continue to show the photos [of the artwork] where and when I can." At that time, she also said that

True Copy Attest
Jane M. Anthony
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

she was having difficulty "moving the work" because "most galleries seem to operate based on credentials and the general public doesn't seem to always respond to obvious talent."

58. On or about June 2004, Yves Moury, a French art collector and businessman, offered to pay for the transportation of the artwork back to Peru for the purpose of showing Plaintiff's work in Peru and in France.

59. Mr. Moury offered to transport the paintings in exchange for two paintings in the Rhode Island collection.

60. Plaintiff then requested in writing that Defendant release his artwork so that it could be transported and delivered to him in Peru.

61. Defendant refused to allow the artwork to be picked up for transport back to Peru until Plaintiff paid her the sum of $8,000, which sum was comprised of the $5,000 initially paid for the purchase of paintings, $2,000 investment in his art career, and $1,000 allegedly paid to Corso for storage of his artwork.

62. Defendant continues to unlawfully retain Plaintiff's artwork, although Plaintiff has made a written demand that it be released.

63. By refusing to allow Plaintiff or his agents access to his artwork, it is unknown whether some or all of the artwork has been damaged or sold.

64. By refusing Plaintiff's demand to release his property, Defendant has intentionally, willfully, and maliciously breached her duties as bailee or agent of the artist and converted said artwork for her own purposes.

65. As a direct and proximate result of Defendant's breach of the oral contract of bailment, Defendant has converted a body of artwork, comprising nearly 5 years of Plaintiff's professional work, which is unique and cannot be replicated.

66. As a direct and proximate result of Defendant's breach of the oral contract of bailment, Plaintiff has lost the opportunity to further his career through exhibitions of his work in Peru, California, and France and lost the ability to reinvest the sales proceeds to further advance his art career.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

67. By reason of Defendant's unauthorized retention of Plaintiff's artwork for over two years, Plaintiff demands consequential damages and damages for emotional distress as shall be proven at trial.

## COUNT III

### Breach of Oral Contract

68. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1-67.

69. On or about February 2004, Defendant, who had been previously introduced to Plaintiff as a person with extensive art connections in New York and Rhode Island, agreed to hold Plaintiff's artwork at her house for the purpose of arranging sales or exhibits of his artwork.

70. Plaintiff agreed that Defendant could keep his artwork at her home for the purpose of arranging sales or exhibits.

71. Defendant invested $2,000 in Plaintiff's art career so that he could continue to live and paint in New York with the understanding that she would recoup her investment when he sold his artwork.

72. Defendant invested additional funds to transport his artwork from Washington, D.C. to Rhode Island with the understanding that she would recoup her investment when he sold his artwork.

73. It was understood by the parties that Defendant would work as an agent to sell or exhibit his work with the ultimate purpose of recovering her expenses as well as a profit.

74. On information and belief, Defendant has not sold or exhibited any of Plaintiff's artwork although she has had possession of the work since February 2004.

75. The agreement between Plaintiff and Defendant terminated when Defendant stopped promoting his work for sale or exhibit. The Defendant was then obligated to release and return the artwork.

76. In June 2004, an art collector offered to transport Plaintiff's artwork back to Peru without cash payment and for the purpose of exhibition.

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

77. When Plaintiff requested the return of his artwork from Defendant, she refused to release it for transport.

78. Plaintiff has attempted to recover his artwork for over two years, but Defendant refuses to allow him or his agents access to it.

79. As a direct and proximate result of Defendant's breach of contract, Plaintiff lost the opportunity to have his artwork transported back to Peru without a cash payment, lost the opportunity to exhibit his work in various new venues, including California and France, and lost at least two years of professional advancement during which time he was forced to start anew to build up his art inventory.

80. As a direct and proximate result of Defendant's breach, Plaintiff demands consequential damages and damages for emotional distress as shall be proven at trial.

COUNT IV

Breach of Trust

81. Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs 1-80 as though fully restated and realleged.

82. Defendant is trustee of certain artwork owned by Plaintiff and held in trust for his benefit.

83. Defendant agreed to hold the artwork for the explicit purposes of exhibition and sale.

84. On or about June 2004, Plaintiff terminated the trustee relationship with Defendant and required that the trust property be returned to him.

85. Defendant knew that she had no right to keep the trust property or use the property in any way that contravened the express purposes of the trust, yet Defendant refused to return the property to Plaintiff.

86. Defendant, knowing that Plaintiff lived 5,000 miles away, had little money, and could not speak English, breached her obligation of good faith and fair dealing by refusing to give up possession of Plaintiff's artwork after the purpose of the trust had expired.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

87. Defendant deliberately caused Plaintiff to miss a unique opportunity to get his work transported to Peru without cash payment, thereby causing him monetary damage and great emotional distress.

WHEREFORE, Plaintiff prays for the following relief against the Defendant:

On Count I:

a) an inventory be made of all the trust property in Defendant's possession;

b) an accounting of all monies collected from the sale of the trust property and rightfully belonging to Plaintiff;

c) the return forthwith of the trust property at Defendant's expense to Plaintiff in Cusco, Peru or payment of its market value which exceeds $50,000;

d) other compensatory and punitive damages, including costs, interest and attorney's fees for willful and knowing violation of her statutory obligations as shall be proven at trial.

On Count II:

a. compensatory damages as shall be proven at trial;

b. special damages for the costs of transporting the artwork to Peru

c. damages for emotional distress

d. punitive damages

e. costs, interest, and attorney's fees; and

f. such further relief as the Court may deem proper.

On Count III:

a. compensatory damages as shall be proven at trial;

b. special damages for the costs of transporting the artwork to Peru;

c. damages for emotional distress;

d. punitive damages;

e. costs, interest, and attorney's fees; and

f. such further relief as the Court may deem proper.

On Count IV:

that this Court Order Defendant to:

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

(1) Provide Plaintiff with an inventory of the artwork in her possession, and an accounting of the amount of trust funds, if any, that she is holding from the sale of any of this work;.

(2) Make available for inspection by Plaintiff's attorney or agents the artwork in her possession, transfer to Plaintiff any amounts, if any, held in trust for him from the sale of artwork, and pay for any damage to the artwork that occurred while the artwork was in her custody and care;

(3) Make provision for the return of the artwork to Plaintiff in Cusco, Peru or pay the market value of the entire collection, which is at least $50,000; and

(4) Pay to Plaintiff damages as follows:

a. compensatory damages as shall be proven at trial;

b. special damages for the costs of transporting the artwork to Peru;

c. damages for emotional distress;

d. punitive damages;

e. costs, interest, and attorney's fees; and

f. such and other further relief as the Court may deem proper.

PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,

BILLY "BRADDY" ROMERO RICALDE

by his attorney,

Martin I. Flax #5486
4 Kings Court
Dedham, MA 02026
(781) 329-4850

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island